**BONANZA TRUCKING CORPORATION,**
Plaintiff,

v.

**The UNITED STATES of America et al., Defendants.**

Court No. 86–03–00350.

United States Court of International Trade.

March 31, 1986.

Soller, Singer & Horn, Carl R. Soller, Margaret H. Sachter and William C. Shayne, New York City, for the plaintiff.

---

**9.** 28 U.S.C. § 1346(b).

**10.** See *Hoston v. Silbert,* 681 F.2d 876, 878–879 (D.C.Cir.1982).

Richard K. Willard, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, and Paula N. Rubin, New York City, for the defendants.

## Memorandum

AQUILINO, Judge:

The plaintiff New York corporation seeks to set aside and enjoin a decision of the defendant Commissioner of Customs to revoke its licenses to cart bonded merchandise and to operate a container station. In addition to opposing the equitable relief requested by the plaintiff, the defendants have interposed a motion for judgment on the administrative record pursuant to the CIT Rule 56.1.

### Background

Bonanza Trucking Corporation's licenses[1] were issued by the Customs Service on May 29, 1969 and on August 2, 1976, respectively. The applications for both licenses had been submitted by the company's president, Angelo Ferrugia.

In or about May 1984, a multi-count indictment was returned in the United States District Court for the Eastern District of New York, charging Mr. Ferrugia with obstruction of justice, perjury and tax evasion. As of August 30, 1984, Mr. Ferrugia resigned as an officer of Bonanza, and he transferred all of his stock to his brother Salvatore. The company's counsel notified the Customs Service of this resignation and transfer of ownership in a letter dated September 12, 1984 and which transmitted copies of the corporate documents. *See* RD F–3. Thereafter, a jury found Mr. Ferrugia guilty of one violation of 18 U.S.C. § 1503 and of one violation of 18 U.S.C. § 1623(a). On November 8, 1984, judgment of conviction was entered, imposing fines of $5,000 and five years' probation on each count. *See* RD F–4.

After having apparently conducted an internal investigation of the facts and circumstances of the criminal proceeding,

Customs, over the signature of its Area Director, JFK Airport Area, issued a letter to Bonanza stamped May 8, 1985 and stating:

> ... Pursuant to § 112.30 of the Customs Regulations (19 C.F.R. 112.30), the District (Area) Director of Customs may revoke or suspend the license of a cartman if the holder of such a license or an officer of a corporation holding such a license is convicted of a felony (19 C.F.R. 112.30(a)(5).
>
> Accordingly, I propose to revoke your license for the following reason:
>
> CHARGE: Violation of § 112.30(a)(5) of the Customs Regulations which provide in pertinent part for revocation if an officer of a corporation holding a cartman's license is convicted of a felony.
>
> SPECIFICATION: On May 2, 1984, Angelo Ferrugia, the President and sole owner of Bonanza Trucking Corp., was indicted by a Federal Grand Jury on 25 counts covering perjury, obstruction of justice and tax evasion. On September 20, 1984 Angelo Ferrugia was found guilty of perjury, in violation of 18 U.S.C. 1023(a) [*sic*] and obstruction of justice in violation of 18 U.S.C. 1503. Although we received the letter of resignation of Angelo Ferrugia dated August 30, 1984, Mr. Ferrugia has continued to act as a de facto officer of Bonanza Trucking Corp. after his resignation.... RD B.

A second, similar letter was sent the same day, revoking Bonanza's license to operate the container station. *See* RD A. Both letters informed the company of its right to appeal.

In a letter dated May 14, 1985 [RD C], Bonanza requested a hearing pursuant to 19 C.F.R. § 19.48(b) on the revocation of its container-station license. A second letter dated May 14th [RD D] requested a hearing pursuant to 19 C.F.R. § 112.30 on the revocation of the license to cart. Both letters called for production of any doc-

---

1. *See* administrative record document ("RD") F–2.

uments supporting the allegations made in the May 8 notices of revocation.

The requests for a hearing were granted, but Customs refused to produce any documents prior thereto on the ground that

> there is no requirement that the government produce evidence to support its case against the license holder. In addition, it would not be in the interest of justice for the government to voluntarily submit evidence to the license holder and not have the opportunity to make a similar request of the license holder. RD E.

The Customs District Director, St. Louis, Missouri, was appointed hearing officer, and the parties appeared before him on June 20, 1985.

At the hearing, the Service's Assistant Regional Counsel called two witnesses, namely, Anthony M. Liberta, who, as JFK Area Director, had revoked Bonanza's licenses, and the probation officer responsible for post-sentence supervision of Angelo Ferrugia. Nine exhibits were also presented by the Service, to wit, The Journal of Commerce's *1985 Transportation Telephone Tickler* listing of Bonanza Trucking Corp. and correspondence with the company's office manager on that listing [RD F–1]; the licenses; the September 12, 1984 letter and enclosed corporate documents; the judgment of conviction; excerpts from the transcript of the trial of Mr. Ferrugia in the district court [RD's F–5, F–6, F–7]; and the transcript of the imposition of his sentence [RD F–8].

Bonanza's counsel at the hearing (and now before this court) was not Angelo Ferrugia's lawyer during his lengthy trial. At the hearing on June 20th, counsel, who apparently was unfamiliar with the trial transcript and who had not been afforded an opportunity to review the selected excerpts beforehand, objected to their introduction into evidence (on the ground of non-relevance). *See, e.g.*, RD F, pp. 30–31. The objection was overruled[2], as was a similar objection to reliance on the sentencing transcript. *See id.* at 33. On cross-ex-

amination, Mr. Liberta indicated that, prior to his issuance of the license revocations, he had received and reviewed a report of the Customs internal investigation. *See id.* at 35, 45. When Bonanza's counsel requested that this document be produced, he was overruled,[3] as was his request that the witness be directed to at least name the author of the report. *See id.* at 41. At the end of the attempted cross-examination, the hearing officer rejected counsel's effort to reserve the right to recall Mr. Liberta in view of the inability to prepare any defense in advance. *See id.* at 55–56.

The probation officer's testimony was based on notes he took in connection with periodic visits with Angelo Ferrugia. Bonanza's counsel requested an opportunity to review the notes in conjunction with his cross-examination; the request was denied. *See id.* at 66–67. Finally, at the close of the Customs presentation, the company's counsel asked that the hearing be adjourned to enable him to prepare a defense. That request was also denied. *See id.* at 75–76.

On November 19, 1985, the hearing officer forwarded his report to the Commissioner of Customs on the proceeding on June 20th, recommending affirmance of the license revocations essentially for the following reasons:

> 1. Angelo Ferrugia was convicted of the felonies of perjury ... and obstruction of justice ... on September 20, 1984.
>
> 2. Although documents were submitted to Customs on September 14, 1984, which stated Angelo Ferrugia resigned as president and director of the corporation (dated August 30, 1984) and transferred his stock ownership in the corporation (dated August 28, 1984) more substantial evidence shows that Angelo Ferrugia continues to run and own Bonanza Trucking Corporation. The evidence includes Angelo Ferrugia's sworn testimony in the public record as of September 10, 1984, that he runs and owns

---

**2.** *See* RD F, pp. 31–32.

**3.** *See id.* at 36–37.

Bonanza Trucking. The claimed new president and owner as cited in the documents of August 30, 1984, testified on September 11, 1984, that he works for Angelo and is not involved in running the company.

3. Since Angelo Ferrugia is a de facto officer of the corporation running the container station and the cartmen's operation, it is fair and appropriate that he and the company be held to the full impact of the requirements and regulations. RD H, p. 11.

\* \* \* \* \* \*

7. Bonanza Trucking Corporation, through their attorney, chose not to present any evidence or witnesses to refute the charges even though they asked for a hearing and were present for a hearing. Bonanza Trucking Corporation's attorney's claim that Customs cannot revoke Bonanza's license and privilege to operate because Angelo Ferrugia signed a letter of resignation as president prior to the time of conviction is not valid. RD H, p. 12.

In a letter dated March 7, 1986 to the JFK Area Director, the Commissioner stated his decision to revoke Bonanza's licenses "based on the recommendation of the hearing officer ... and the evidence presented at the hearing". RD J.

Upon receipt of the decision, plaintiff commenced this case, obtaining a temporary restraining order [4] upon order to show cause. The complaint pleads five causes of action under the Administrative Procedure Act on allegations essentially that (1) Angelo Ferrugia was not an officer of Bonanza at the time of his conviction, (2) the Customs Service did not prove that he was an officer, (3) the revocation of the container-station license was a denial of due process,

(4) the Commissioner of Customs should have disqualified himself, and (5) Bonanza was not given an opportunity to comply with the Service's regulations before revocation.

On April 14, 1986, counsel for both sides presented oral argument in open court in support of their respective positions. The defendants concede jurisdiction of this court under 28 U.S.C. § 1581(i).[5]

### Discussion

As indicated above, pages 1171–72, the hearing on June 20, 1985 was requested and held pursuant to Sections 19.48 and 112.30 of Title 19, C.F.R.,[6] both of which provide for the right of cross-examination. For example, subsection (d)(2) of 19 C.F.R. § 112.30 states:

> *Conduct of hearing.* The holder of the license may be represented by counsel at the revocation or suspension hearing. All evidence and testimony of witnesses in such proceeding, including substantiation of charges and the answer thereto, shall be presented with both parties having the right of cross-examination....[7]

At the June 20 hearing, the JFK Area Director conceded that revocation of Bonanza's license to cart was a "very serious" matter. RD F, p. 53. In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Supreme Court stated:

> ... Once licenses are issued ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.[8]

4. This order of March 18, 1986 has continued in effect on consent of the defendants.

5. *Compare* plaintiff's Verified Complaint, para. 1 *with* defendants' Answer, para. 1.

6. *See* RD H (transmittal letter from hearing officer to Commissioner of Customs (Nov. 19, 1985)).

7. *See also* 19 C.F.R. § 19.48(c).

8. 402 U.S. at 539, 91 S.Ct. at 1589, citing *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Federal agency action in the form of revocation of a security clearance was under review in *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), wherein the Court reminded the government:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of ... testimony.... We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right "to be confronted with the witnesses against him." *This Court has been zealous to protect these rights from erosion.* It has spoken out not only in criminal cases but also *in all types of cases where administrative and regulatory actions were under scrutiny.*[9]

The Supreme Court has also held that it is "equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), quoting from *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ This Court of International Trade has stayed the revocation of a Customs license where the holder thereof has been denied a meaningful opportunity to be heard. *See, e.g., Barnhart v. United States Treasury Department*, 7 CIT 295, 588 F.Supp. 1432 (1984). The record in this case clearly reflects the denial of such an opportunity, commencing with the assertion of Customs before the hearing, *supra* page 1172, that the Service was not required to produce any evidence in support of its case for revocation. When the Service then sought to adduce proof at the hearing, its main witness identified the report of the internal investigation as the key to the evidence he relied on in reaching his decision to revoke, namely, the excerpts from the criminal trial transcript and the subsequent sentencing transcript. In the face of this testimony, the Customs counsel nevertheless vigorously opposed producing a copy of the report, or even the name of its author, to the other side[10], and the hearing officer sustained the objection. When the Service's other witness indicated he could not testify other than by referring to his notes, they were not ordered produced. When Bonanza's attorney sought an adjournment to prepare a rebuttal to the Service's evidence, the hearing officer denied the application without stating any reason for his ruling. *See* RD F at 76.

Of course, procedural irregularities in administrative proceedings must be prejudicial to a party in order to justify judicial intervention. *E.g., United States v. Priority Products, Inc.*, 9 CIT ——, 615 F.Supp. 591, 592 (1985), citing *Melamine Chemicals, Inc. v. United States*, 8 CIT 105, 592 F.Supp. 1338 (1984); *American Motorists Insurance Co. v. United States*, 5 CIT 33 (1983); *John V. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, C.D. 4377, 347 F.Supp. 1390 (1972), *aff'd*, 61 CCPA 52, 496 F.2d 1225 (1974).

■ This court concludes that it was clearly prejudicial in this case for Customs to withhold from opposing counsel its report of the facts and circumstances of Bonanza's operations, especially since the record indicates that that report prompted the license revocations. In fact, on this point, the government's situation is similar to its situation in *Greene v. McElroy, supra*, where it was obvious that confidential

---

9. 360 U.S. at 496–97, 79 S.Ct. at 1413 (footnote and citations omitted; emphasis added).

10. *See* RD F at 35–41.

reports had been relied on in revoking the security clearance and yet they were never made available to the holder of the clearance during the administrative process. *See* 360 U.S. at 479, 79 S.Ct. at 1404. The Court in *Greene* reversed the revocation, and the same remedy is mandated here. *Cf. Barnhart v. United States Treasury Department, supra.*

Furthermore, this is yet another case which proves the importance of meaningful cross-examination. Angelo Ferrugia's trial in 1984 for perjury was based on testimony he gave to a grand jury in 1981. Understandably, this testimony was read to the petit jury by the prosecution. At the subsequent administrative hearing, some of the 1981 testimony contained in the September 1984 transcript [11] was presented by counsel for Customs without warning to opposing counsel or the hearing officer of the time discrepancy. *See* RD F at 25–32. Indeed, the Service's attorney attempted to create the impression that 1981 was 1984 as follows:

> This [RD F–5] ... contains statements after Mr. Angelo Ferrugia had resigned on the 30th and it has statements ... in the transcript as to Angelo—in Angelo Ferrugia's own words himself, what his role was or what his role is running the business of Bonanza Trucking Corporation.... RD F at 28.

This attempt was successful.

While the record before this court does not show Angelo Ferrugia testified at his trial in 1984, the report sent to the Commis-

sioner of Customs and quoted above, pages 1172–73, clearly shows that the hearing examiner believed that he had testified, to wit:

> ... The evidence includes Angelo Ferrugia's sworn testimony in the public record as of September 10, 1984, that he runs and owns Bonanza Trucking.[12] ....

Moreover, the subsequent decision of the Commissioner relied on this erroneous, if not tainted, finding, which, of course, is central to the issue of whether the Bonanza licenses are subject to revocation pursuant to 19 C.F.R. § 19.48(a)(3) and § 112.-30(a)(5),[13] respectively. In any event, neither Bonanza's counsel nor the hearing officer appears to have recognized the fundamental discrepancy, either during the hearing [14] or thereafter. Indeed, at first, defendants' counsel herein sought to rely on the same erroneous implication that Angelo Ferrugia had actually testified in September 1984.[15] This "oversight" was corrected in their reply brief [16], wherein the defendants now argue that Bonanza's counsel had "actual notice of the nature of these portions of the transcript" [17], that on summation he was silent as to them and their probative value and that this silence resulted in a waiver of any right to argue that the hearing officer misunderstood their nature.

The record before this court does not support this thesis. Rather, as indicated above, the record shows that plaintiff's counsel was not Angelo Ferrugia's lawyer, that he was not otherwise familiar with the transcript of the trial, that the Customs

---

**11.** *See* RD F–5 at 239, 298, 308–10, 315 (Sept. 10, 1984); RD F–6 at 362, 374 (Sept. 11, 1984).

**12.** RD H, p. 11. *See id.* at 9 ("Angelo Ferrugia testified he is the full owner of Bonanza Trucking and he has no partners") and 10 ("the sworn testimony of Angelo at the trial invalidates belief that he is not president in fact"; "Angelo's own trial testimony shows he has no intent of stopping running the company").

**13.** Both regulations permit revocation if an officer of a corporation holding the license is convicted of a felony.

**14.** During her closing argument on June 20, 1985, the Customs counsel made a passing reference to Angelo Ferrugia's grand jury testimony which was read into the record [*see* RD F at 78],

though that reference skipped over critical page 289 of the trial transcript.

**15.** *See* Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendant's Motion for Judgment on the Administrative Record, p. 15.

**16.** Defendant's Opposition to Plaintiff's Motion for Judgment on the Agency Record and Reply to Plaintiff's Response to Defendants' Cross-Motion for Judgment on the Agency Record and Plaintiff's Motion for a Preliminary Injunction, p. 8.

**17.** *Id.* at 9.

counsel refused to provide him with the selected excerpts in advance of the hearing, that he objected to their introduction at the hearing[18], which was overruled, and that he was not permitted to prepare a case in rebuttal. Finally, the hearing officer did indeed misunderstand their nature.

The defendants are correct in their contention that this court's review of their record is pursuant to 28 U.S.C. § 2640(d), which is tied to the Administrative Procedure Act, 5 U.S.C. § 706. However, that statute requires the court to set aside agency action which is found to be without observance of procedure required by law.

As shown above, the procedure required by law in the administrative process under review herein was meaningful cross-examination, which the court finds was denied plaintiff Bonanza Trucking Corporation. Since the agency action must therefore be set aside, defendants' motion for judgment on the agency record must be denied. The court need not and does not reach other issues raised by the parties.

Judgment will enter accordingly.

---

18. Certainly, his acceptance of opposing counsel's representation as to page numbers [*see* RD F at 25] is of no moment, especially in view of EC 7-14 of the Lawyer's Code of Professional Responsibility to the effect that a government lawyer in an administrative proceeding has the responsibility to develop a full and fair record.