BONANZA TRUCKING
CORPORATION,
Plaintiff,

v.

The UNITED STATES of America; The
Secretary of the Department of the
Treasury; The Commissioner of the
U.S. Customs Service; The Regional
Commissioner of the U.S. Customs for
Region II; The Area Director of the
United States Customs Service for
J.F.K. International Airport, Defend-
ants.

Court No. 86–03–00350.

United States Court of
International Trade.

June 18, 1987.

Soller, Singer & Horn (Carl R. Soller and Margaret Hardy Sachter, New York City, of counsel), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Paula N. Rubin), New York City, for defendants.

## MEMORANDUM & ORDER

AQUILINO, Judge:

Following entry of judgment enjoining the defendants from revoking its licenses to cart bonded merchandise and to operate a container station based on the agency record presented, the plaintiff has applied for an award of its costs and its attorneys' fees and expenses.

### Background

The judgment was based on the decision of the court published at 10 CIT ——, 642 F.Supp. 1170 (1986), and cited hereinafter as "Slip Op. 86–47", familiarity with which is presumed. It concluded that Bonanza Trucking Corporation ("Bonanza") had been denied procedure at the administrative level required by law within the meaning of 5 U.S.C. § 706. That is, relying on cases such as *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) and *Barnhart v. United States Treasury Department*, 7 CIT 295, 588 F.Supp. 1432 (1984), this court determined that Bonanza had been denied a meaningful opportunity to be heard. The Customs Service had asserted that it was not required to produce any evidence in support of its decisions to revoke the company's licenses. It refused to produce an internal investigative report that its main witness identified as the key to the evidence upon which he relied in making those decisions. Its hearing officer refused a Bonanza request for time to prepare a rebuttal, and he thereafter relied in his report to the Commissioner of Customs on 1981 grand-jury testimony as if it had been given by the witness at trial in 1984. This erroneous, if not tainted, finding was important and was later accepted as true by the Commissioner.

Notwithstanding the nature of the court's decision, which was not appealed, the defendants oppose award of any fees or expenses.

### I

Plaintiff's application is made pursuant to the Equal Access to Justice Act ("EAJA"), as extended and amended by Congress in Pub.L. No. 99–80, 99 Stat. 183 (1985) and codified at 28 U.S.C. § 2412.

### A. *Lack of Substantial Justification*

The plaintiff, in the first instance, seeks an award of fees and expenses under section 2412(d)(1)(A) incurred during the judicial proceedings and under section 2412(d)(3) for those incurred during the underlying administrative proceedings. The two EAJA provisions are, in pertinent part, as follows:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in ... proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

\* \* \* \* \* \*

(3) In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, ... the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

Plaintiff's application was filed 90 days after entry of this court's judgment. EAJA requires that a request for an award under subsection (d) be filed "within thirty days of final judgment". 28 U.S.C. § 2412(d)(1)(B). As discussed in *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1459 (Fed.Cir.1986), the "party seeking an award under the EAJA must submit the application to the court within 30 days of the date when the judgment becomes final and not appealable", relying on 28 U.S.C. § 2412(d)(2)(G), and it was held in *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, that, since the government had 60 days to appeal the underlying judgment, the plaintiff had a total of 90 days within which to file its application.[1] The same circumstance exists here, hence the same conclusion.

Indeed, the defendants have not challenged the application on the basis of time. Rather, they insist that, although "the court found that *erroneous evidence* and certain *procedural irregularities* in the administrative proceedings denied Bonanza meaningful cross-examination and procedural due process of law"[2], their "litigation position both at the agency level and upon judicial review was substantially justified". Defendants' Opposition, p. 13.

This contention does not comport, however, with the holding in *Gavette*, where the plaintiff Internal Revenue Service agent had been forced into a disability retirement as a result of an IRS submission to the OPM contending unfitness for further service. The IRS, citing provisions of the Freedom of Information Act and the Privacy Act, had refused to comply with the agent's request for copies of documents used to support its submission. The Court of Appeals concluded that the agency refusal to provide the information constituted harmful procedural error. *See* 808 F.2d at 1459. In deciding to award the plaintiff fees under EAJA, the court held that the substantial-justification standard

> requires that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts. *Id.* at 1467 (emphasis in original, footnote omitted).

After examining the facts contained in the record, it determined that the government had not shown that the agency met this standard in refusing to disclose the information sought. While the IRS had attempted to justify this refusal on its understanding of the two statutes, the court was

1.  11 CIT ——, 658 F.Supp 902, 904 (1987), *appeal filed* May 7, 1987. *See also Keasler v. United States*, 766 F.2d 1227, 1230–31 (8th Cir. 1985); *Feldspausch v. Heckler*, 763 F.2d 229, 232 (6th Cir.1985); *Massachusetts Union of Public Housing Tenants, Inc. v. Pierce*, 755 F.2d 177, 180 (D.C.Cir.1985); *Taylor v. United States*, 749 F.2d 171, 174 (3d Cir.1984); *McDonald v. Schweiker*, 726 F.2d 311, 315 (7th Cir.1983). *But compare McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983), and *Gold Kist, Inc. v. U.S. Dep't of Agriculture*, 741 F.2d 344, 349 (11th Cir.1984).

2.  Defendants' Opposition to Plaintiff's Application for Attorneys [*sic*] Fees and Costs [hereinafter cited as "Defendants' Opposition"], p. 13 (emphasis in original).

not convinced that the agency had not persisted in pressing a tenuous factual or legal position.

■ The Customs Service's failure to disclose its internal investigative report herein is analogous to the refusal to disclose in *Gavette*. However, defendants' argument that their position was substantially justified is even weaker here, where no genuine attempt was made to support the failure to disclose the document.[3] Rather, the defendants claim that the "price of these errors is the exclusion of the evidence." Defendants' Opposition, p. 13 (emphasis deleted).

This is not necessarily the only price. As discussed in *Gavette*,

> EAJA rested on the premise that individuals and small businesses "may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." The purpose of the EAJA was to "reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States." 808 F.2d at 1459–60 (footnotes omitted), quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6 (1980).

In other words, with the enactment of EAJA, parties like Bonanza which seek to vindicate their rights at the administrative level may be awarded fees and expenses incurred thereby, unless the court finds that the position of the United States was substantially justified.

As was the case in *Gavette*, this court is unable to conclude that the denial of procedure required by law was substantially justified. Thus, the plaintiff may recover reasonable attorneys' fees and expenses sustained by it before the Customs Service. That denial of due process led to commencement of this action and vindication of plaintiff's rights thereto. It has also resulted in the instant application for an award of those fees and expenses incurred by the plaintiff herein. The nature of this case, in turn, gives rise to the question of whether unsuccessful defense of an action asserting such denial of due process can ever result in an *ex post facto* determination under EAJA that the position of the United States in court was substantially justified. If there is such a case, this is not the one.

Indeed, at the outset the defendants sought to perpetuate the perception that the 1981 testimony had really been given in 1984.[4] Ultimately, they admitted the misrepresentation, but insisted that opposing counsel's original silence amounted to a waiver of the right to argue before this court that the hearing officer had misunderstood the nature of the criminal-trial transcript.[5] As indicated above, that stance was rejected upon the court's findings that plaintiff's counsel had not been granted access to the Customs evidence in advance of the hearing, had objected to its introduction, and had not been permitted time to prepare a rebuttal. *See* Slip Op. 86–47, 10 CIT at ——, 642 F.Supp. at 1175–76.

---

**3.** At the hearing before this court, a question was posed as to why the report had not been disclosed. Defendants' counsel at first tried to argue that it had been taken into account prior to any administrative decision. Upon reminder that the decision-maker had read and relied on the report, counsel tried to minimize its impact on the revocation decisions by contending that other factors contained in the agency record had a greater influence on the making of that determination than the report. Likewise, a reply brief contained irrelevant arguments that the report was not part of the agency record and that the decisionmaker testified at the administrative hearing as to those portions of the report which influenced his decision.

**4.** *See* Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendant's Motion for Judgment on the Administrative Record, p. 15.

**5.** A more appropriate response, in the court's view, would have been to suggest remand for rehearing in view of the critical nature of the error. While there may have been reasons for the failure to make such a suggestion, the court cannot conceive on its own of their having been substantially justified.

In view of the nature of the administrative proceedings and resultant judicial disposition, the court did not rule on the substantive disagreement between the parties, who presented their competing arguments as to the meaning of Customs regulations [19 C.F.R. § 19.48(a)(3) and § 112.30(a)(5)] providing for revocation of licenses held by corporations with officers convicted of felonies. In fact, the defendants changed their position on the merits from what it had been at the administrative level, and following entry of the court's judgment, the Service proposed to change section 112.30(a)(5) to provide for license revocation if:

> The holder of such a license or an officer of a corporation holding such a license is convicted of a felony, or is convicted of a misdemeanor involving theft, smuggling, or a theft-connected crime. *Any change in the employment status of the corporate officer (e.g., discharge, resignation, demotion, or promotion) prior to conviction for a felony or conviction for a misdemeanor involving theft, smuggling or a theft-connected crime resulting from acts committed while a corporate officer, will not preclude application of this provision.* 51 Fed.Reg. 30,377 (Aug. 26, 1986).

Customs set forth its reasons for this proposed [underscored] amendment as follows:

> It has come to Customs attention that a literal interpretation of th[e current] regulation is allowing officers of corporations to commit acts constituting the specified offenses, resign from the corporation before conviction, and therefore allow the corporation to retain its cartman or lighterman license. This is occurring even in instances when the officer has resigned from his or her corporation in name only but continues to exercise control over the corporation.

> Customs desires to make it clear that application of this provision is dependent upon a conviction arising from an act or acts committed while a person was a corporate officer. The person's employ-

ment status at the time of the conviction is unimportant. Therefore, resignation, discharge, demotion, or promotion, or any change in the employment status of the corporate officer prior to conviction will not preclude the district director from suspending or revoking the corporation's cartman or lighterman license. *Id.* at 30,376.

Such *post hoc* reasoning does not constitute substantial justification for a prior position and can be another ground for an award under EAJA. *See, e.g., Scheunemeyer v. United States,* 776 F.2d 329, 331 (Fed.Cir.1985). Moreover, were it not *post hoc,* this reasoning still could not rise to the level of a "special circumstance", making an award unjust within the meaning of section 2412(d)(1)(A), *supra.* While the defendants quote correctly congressional intent that this EAJA provision be a "safety valve" to "insure that the government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts"[6], their interpretation is not novel. *Cf., e.g., Brinker v. Guiffrida,* 798 F.2d 661, 667–68 (3d Cir. 1986). Furthermore, the defendant Commissioner did not base his decision to revoke on such an interpretation. *See* Slip Op. 86–47, 10 CIT at ——, 642 F.Supp. at 1173.

## B. *Absence of Bad Faith*

■ The plaintiff also seeks an award under EAJA subsection (b), which provides that the United States "shall be liable for ... fees and expenses to the same extent that any other party would be liable under the common law", 28 U.S.C. § 2412(b). Awards of attorneys' fees thereunder have been made when the unsuccessful party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons". *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

The plaintiff seeks to equate the irregularities during the administrative proceed-

---

6. S.Rep. No. 253, 96th Cong., 1st Sess. 7 (1979); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), U.S.Code Cong. & Admin.News 1980, pp. 4953, 4990.

ings, as well as an alleged attempt by Customs agents to carry out the result thereof at the very time counsel was running to court for immediate equitable relief[7], with bad faith on the part of Service. While this court was convinced that such relief was necessary and appropriate, whereupon the Service was enjoined from taking further action based on the agency record, the common-law standard is broader than the statutory substantial-justification standard.[8] As such, it requires analysis of the motives of the unsuccessful litigant.

Analyzing the facts and circumstances of this case does not lead the court to conclude that the defendants sought in bad faith to revoke plaintiff's licenses as a result of its erstwhile president's conviction of two federal felonies, nor is the court lightly to infer bad faith for purposes of awards of attorneys' fees. *See, e.g., Atochem v. United States,* 9 CIT ——, 609 F.Supp. 319, 323 (1985). As pointed out in that case, in *United States v. Standard Oil Co. of California,* 603 F.2d 100, 103 (9th Cir.1979), the court characterized the bad-faith exception as applicable " 'only in exceptional cases and for dominating reasons of justice' ", quoting 6 Moore's Federal Practice ¶ 54.77[2] at 1709–10 (2d ed. 1972). Neither such circumstance exists here.

## II

■ The plaintiff has shown that the conditions for an award under EAJA subsection (d) are met in this case. However, applications for attorneys' fees and expenses have always required sufficient detail and explanation to enable a reviewing court to make a fair and reasonable award. In fact, this Court of International Trade's Rule 68 specifies both the form and the content of any such application. It has not been carefully adhered to by the plaintiff, which seeks recovery of costs and of fees for three attorneys and a summer associate/law clerk, plus expenses.

A four-page affidavit has been submitted by Margaret Hardy Sachter, page 3 of which is essentially blank. That is, total hours are summarized very generally in two lines, then paragraph 7 starts "[t]he detailed time records of [her] work on this case are as follows", but no such details do in fact follow. While the plaintiff was granted leave to reply to defendants' papers in opposition, which challenged the contents of this affidavit[9], the reply did not fill in the blank, and that part of plaintiff's application as seeks recovery of fees *ex rel.* Ms. Sachter is thus not adequate on its face to justify an award. The same is true of the "30.75 hours of work performed by other attorneys in small amounts as well as a variety of law clerks" referred to in the affidavit of Carl R. Soller, paragraph 6. When fees are sought at the expense of a losing party in court, no amount of work, or the money claimed therefor, is too small to obviate explanation.

The court is also constrained to deny an award of any of plaintiff's costs or expenses. EAJA provides that a

> judgment for costs, as enumerated in section 1920 of this title ... may be awarded to the prevailing party in any civil action brought ... against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation. 28 U.S.C. § 2412(a).

While its papers refer to an amount of $1,207.00, the plaintiff leaves the court to guess as to how that figure was arrived at and whether it includes costs within the

---

7. *See* Memorandum of Facts and Law in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses under 28 U.S.C. § 2412, pp. 28–29 and Exhibit A thereto.

8. As discussed in point II, *infra,* the ceiling for an award of fees under this standard is $75 per 28 U.S.C. § 2412(d)(2)(A), whereas no such ceiling exists for instances of bad faith.

9. *See* Defendants' Opposition, p. 25, n. 8.

meaning of 28 U.S.C. § 1920 or expenses of the kinds permitted under 28 U.S.C. § 2412(d)(2)(A). The plaintiff has not submitted a bill of costs as required by section 1920 or an itemized statement of expenses of the type contemplated by EAJA subsection (d)(1)(B).

■ In addition to the affidavit of Mr. Soller referred to above, one has been submitted on behalf of William C. Shayne. Both affidavits have barely adequate descriptions of the services each of the affiants performed, and both seek awards at the rate of $175 per hour. However, the defendants correctly point out that under 28 U.S.C. § 2412(d)(2)(A)

> attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee.

The plaintiff essentially makes two arguments in an attempt to justify the higher fee. Each hinges on alleged unavailability of qualified counsel. Plaintiff's counsel claim that they are "experienced litigants" in the areas of customs and international trade law. Plaintiff's Memorandum, p. 32. In *Gavette*, the Court of Appeals permitted an award of fees at an hourly rate of $100 because of "the limited availability of attorneys in the Detroit area, who have the capability and willingness to handle proceedings of the nature and kind involved in this case". *Gavette v. Office of Personnel Management*, 788 F.2d 753, 754 (1986). That case involved an appeal from an adverse decision of the Merit Systems Protection Board. The court found the government's objection that the appellant had made no showing as to unavailability of counsel "insufficient to prevail against the attorney's affidavit". *Id.*

In contrast to the claimed limited availability of counsel in Detroit willing to pursue that specialized case, this court is not aware of any such shortage herein. Many law firms and individual practioners are located within the City of New York, the home of Bonanza, who are able (and therefore presumably willing) to handle matters relating to customs and international trade. In addition, there are practioners who have had experience with license revocations by other government agencies and with questions of procedural due process. Moreover, the plaintiff makes no claim that it experienced difficulties obtaining counsel.

The plaintiff does attempt to justify its request by contending greater difficulty in retaining counsel when the relief sought is non-monetary than when monetary. Plaintiff's Memorandum, p. 33. This court is not persuaded. The bar in this area is broadly diversified, and many practioners prefer compensation on an hourly basis rather than await payment contingent upon recovery of a money judgment. Additionally, many lawyers recognize that their obligations as professionals encompass representation of clients whose constitutional rights have been offended, without regard to the amount of fees that can be generated. *Cf., e.g.*, EC 2–16 and EC 2–25 of the Lawyer's Code of Professional Responsibility.

In sum, the court does not find that the plaintiff has shown the existence of a special factor which would justify an award in excess of the statutory $75 per hour. On the other hand, plaintiff's counsel have proven that higher rates are appropriate for them under other circumstances. This being true, the court concludes that the plaintiff is entitled to recover fees for Mr. Soller and for Mr. Shayne equal to the $75 maximum.

The defendants question the claimed rate in this amount for Richard M. Wortman, who worked on this matter in Mr. Soller's firm as a summer associate/law clerk while still enrolled in law school. EAJA, of course, contemplates "attorney fees", and a person not admitted to the bar, regardless of his or her experience [10] or legal prowess, is not a lawyer.

■ The question of a reasonable fee for such a person thus posited has been dealt with by other courts in at least three differ-

---

10. Mr. Wortman's affidavit specifies certain customs-related work experiences.

ent ways. At one extreme, some courts have strictly construed attorney-fee provisions to allow only lawyers to be compensated. *See, e.g., CTS Corporation v. Electro Materials Corp. of America,* 476 F.Supp. 144, 145 (S.D.N.Y.1979); *Grendel's Den, Inc. v. Larkin,* 582 F.Supp. 1220, 1229 (D.Mass.), *modified on other grounds,* 749 F.2d 945 (1st Cir.1984). On the other side, some courts have permitted such fees at the rates at which the clients were billed. *See, e.g., Louis v. Nelson,* 646 F.Supp. 1300, 1320–21 (S.D.Fla.1986); *Burt v. Heckler,* 593 F.Supp. 1125, 1133 (D.N.J. 1984); *Hoopa Valley Tribe v. Watt,* 569 F.Supp. 943, 947 (N.D.Cal.1983). Finally, some courts award amounts commensurate with the law-firm rate of pay to the law clerk. *See, e.g., American Academy of Pediatrics v. Heckler,* 580 F.Supp. 436, 440 (D.D.C.1984), *modified on other grounds,* 594 F.Supp. 69; *Ashton v. Pierce,* 580 F.Supp. 440, 443 (D.D.C.1984).

This third approach seems most in line with the congressional intent that the

> ceiling on attorney fees relates only to the compensation of lawyers or agents (e.g., accountants themselves). It does not include their overhead expenses or other costs connected with their representation of a particular interest in a proceeding. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980), U.S.Code Cong. & Admin.News 1980, p. 4994.

The court in *Ashton* concluded, for example, that "[t]o award 'fees' for law clerk and paralegal time at hourly charges billed to clients would, in effect, be to compensate those firms both for overhead and profit". 580 F.Supp. at 443. It found "that the appropriate means of compensation for law clerk and paralegal time is to treat this class of personnel as an expense covering 'study' and 'analysis' ". *Id.* While Congress may not have precisely contemplated law-clerk research in defining "fees and other expenses" in EAJA, the chosen definition is broad enough to cover such work.

In deciding to take the third approach in the interests of economy and of fairness, this court cannot determine from plaintiff's application what the rate of compensation to law-clerk Wortman was, other than to rule now that $75 would not be reasonable under the circumstances. Indeed, the plaintiff requested $50 for each of the 30.75 other-attorney and law-clerk hours already denied by the court, *supra* page 1458. But this figure also may not be either what Mr. Wortman was actually paid or what is reasonable.

The Supreme Court has warned that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Nevertheless, EAJA gives rise to many questions, including the nature of the work sought to be compensated. Counsel, in their reply, offer to produce their time records for review. The court accepts. *See id.* at 441, 103 S.Ct. at 1943 ("the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed") (Burger, C.J., concurring). *See also Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952; *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983); *New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983); *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982).[11]

■ The defendants contend that the plaintiff is not entitled to an award for legal work performed before Customs, as 28 U.S.C. § 2412(d)(3) only applies to administrative proceedings required by statute. *See* Defendants' Opposition, p. 9. That provision of EAJA allows a court to include an award for fees and expenses incurred before an administrative agency when it is conducting a "judicial review of an adversary adjudication, as defined in

---

11. The court notes in passing that time spent preparing a fee application such as the one at bar is covered under EAJA, albeit at the reason-able rate(s) set by the court. *See, e.g., Schuenemeyer v. United States,* 776 F.2d 329, 333 (Fed. Cir.1985).

subsection (b)(1)(C) of Section 504 of title 5", to wit:

> ... (i) an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose ... of granting or renewing a license ....

Section 554 refers to "an adjudication required by statute to be determined on the record after an agency hearing". 5 U.S.C. § 554(a). The defendants contend that the revocation proceedings were excluded from section 554 since they were not required by statute and thus were outside the scope of EAJA. *See* Defendants' Opposition, p. 9.

This argument apparently fails to consider

> that the limitation to hearings "required by statute" in ... the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion.... They exempt hearings of less than statutory authority, not those of more than statutory authority. We would hardly attribute to Congress a purpose to be less scrupulous about the fairness of a hearing necessitated by the Constitution than one granted by it as a matter of expediency.[12]

This court's decision in Slip Op. 86–47 was predicated upon a conclusion that the Service had violated the Fifth Amendment in withholding the internal investigative report that prompted the license revocations and in denying Bonanza meaningful cross-examination.[13] Since the Constitution compelled Customs to provide Bonanza with a meaningful opportunity to be heard, the only hearing held pursuant to its regulations was an adjudication within the meaning of section 554.

■  The defendants also question plaintiff's entitlement to an award for the time spent on substantive issues not decided by the court.[14] Whether a prevailing party is entitled to fees for work performed on unresolved issues was addressed by the Supreme Court in *Hensley*, which determined that "the most critical factor is the degree of success obtained."[15] The Court recognized that

> [w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. 461 U.S. at 440, 103 S.Ct. at 1943.

*Devine v. Sutermeister,* 733 F.2d 892, 898 (Fed.Cir.1984), added that a

> court should look to the substance of the litigation to determine whether an applicant has *substantially* prevailed in its position, and not merely the technical disposition of the case or motion. In effect, substance should prevail over form. [emphasis in original, footnotes omitted]

*Hensley* and *Devine* require this court to examine the relief that was sought and obtained by the plaintiff. Clearly, Bonanza's goal was to prevent the revocation of

---

**12.** *Wong Yang Sung v. McGrath,* 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950). Congress, six months later in the Supplemental Appropriation Act of 1951, 64 Stat. 1048, exempted deportation proceedings from the APA. *But cf. Ruiz v. Immigration & Naturalization Service,* 813 F.2d 283 (9th Cir.1987), holding that EAJA awards are available in such proceedings.

**13.** This court's decision also dealt with the infirmities in the hearing provided.

**14.** *See* Defendants' Opposition, pp. 25–27. The government apparently does not object with respect to the procedural issues raised by the plaintiff that also were not decided. *See* Complaint, paras. 30–33 (the Commissioner should have disqualified himself); paras. 34–41 (Customs was required to give Bonanza an opportunity to comply with the regulations before revoking the licenses).

**15.** 461 U.S. at 436, 103 S.Ct. at 1941. While *Hensley* involved attorneys' fees under 42 U.S.C. § 1988, the Court stated that "[t]he standards set forth ... are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433, n. 7, 103 S.Ct. at 1939 n. 7.

its licenses. It raised alternative legal grounds for the pleaded outcome. Its claims were interrelated, based as they were on the same facts. The defendants put the plaintiff in the position where it had to make all of its points—at the risk of loss its business. Since the plaintiff substantially prevailed, it is entitled to an award under EAJA for the attorneys' time those points entailed.

### Conclusion

In view of the foregoing, the plaintiff may recover fees for Carl R. Soller and William C. Shayne at a rate of $75 for each hour of work on this matter adequately reflected in contemporaneous time records presented for this court's review within seven days of the date hereof. The plaintiff may also recover the reasonable expense of the work performed by Richard M. Wortman upon presentation within seven days of his time records and rate of compensation.

In all other respects, plaintiff's application for an award of its costs and its attorneys' fees and expenses is denied.

So ordered.