SIGMA CORPORATION, Southern Star, Inc., City Pipe and Foundry, Inc., and Long Beach Iron Works, Inc.; Overseas Trade Corporation; Guangdong Metals & Minerals Import & Export Corporation; U.S. Foundry & Manufacturing Co., Alhambra Foundry, Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries Inc., Charlotte Pipe & Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc. and Vulcan Foundry, Inc., Plaintiffs,

U.V. International, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

Guangdong Metals & Minerals Import & Export Corporation; U.S. Foundry and Manufacturing Co., et al., Defendant–Intervenors.

Slip Op. 95–95.
Court No. 92–04–00283.

United States Court of International Trade.

May 23, 1995.

White & Case, Washington, DC (Walter J. Spak and Vincent Bowen) for plaintiffs Sig-

ma Corp., Southern Star, Inc., City Pipe and Foundry, Inc. and Long Beach Iron Works and plaintiff-intervenor U.V. Intern.

Ross & Hardies, Washington, DC (Jeffrey S. Neeley) for plaintiff Overseas Trade Corp.

Cameron & Hornbostel, Washington, DC (Dennis James, Jr.) for plaintiff and defendant-intervenor Guangdong Metals & Minerals Import & Export Corp.

Collier, Shannon, Rill & Scott, Washington, DC (Paul C. Rosenthal, Mary T. Staley and Robin H. Gilbert) for plaintiffs and defendant-intervenors U.S. Foundry & Mfg. Co., Alhambra Foundry, Inc., Allegheny Foundry Co., Bingham & Taylor Div., Virginia Industries, Inc., Charlotte Pipe & Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc. and Vulcan Foundry, Inc.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Cynthia B. Schultz); of counsel: Jeffery C. Lowe, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

### OPINION

TSOUCALAS, Judge:

Plaintiff Guangdong Metals & Minerals Import and Export Corporation ("Guangdong") and defendant-intervenors U.S. Foundry & Manufacturing Co., Alhambra Foundry, Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Charlotte Pipe & Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc. and Vulcan Foundry, Inc. ("defendant-intervenors" or "domestic industry") challenge as unsupported by substantial evidence and not in accordance with law the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand filed in this case, *Final Remand Determination Concerning Iron Construction*

*Castings from the People's Republic of China Pursuant to Slip Op. 93-238 ("Remand Results").* Specifically, Guangdong contests Commerce's use of import data based on cost and freight values. Defendant-intervenors contest Commerce's use of Indian import statistics to value the pig iron factor of production and revision of the best information available ("BIA") rate.

## Background

In *Sigma Corp. et al. v. United States,* 17 CIT ——, 841 F.Supp. 1275 (1993), the Court remanded this case for Commerce to reconsider its use of Indian pig iron and scrap iron prices to value Chinese pig iron foreign market value, to recalculate freight costs using the actual information on the record which was submitted by respondents, and to assess duties for China National Machinery Import and Export Corporation ("Machimpex"), Liaoning at the 11.66 percent deposit rate that was paid upon importation.

Commerce filed the Remand Results on April 1, 1994. Oral argument was held on November 22, 1994.

## Discussion

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

**1.** *Use of Indian Pig Iron and Scrap Prices*

Guangdong concurs in the Remand Results regarding import statistics to value pig iron and scrap. Guangdong agrees with Commerce's decision to use Indian import statistics. *Plaintiff Guangdong Minmetals' Comments on Results of Remand and Request for Further Remand ("Guangdong's Brief")* at 1-2.

Domestic industry asserts Commerce has not adequately supported its use of Indian pig iron import statistics because pig iron imports were controlled by the Indian government, the import categories used do not reasonably represent the more expensive grade of pig iron used to produce castings and result in an unlawful understatement of constructed value, and the average unit values from the Indian import statistics were substantially lower than every other pig iron price obtained by Commerce from other nations. Alternatively, domestic industry argues that, even if the statistics are acceptable, Commerce should have used the proper tariff category that includes the product used to manufacture castings. In addition, domestic industry argues Commerce should be required to adjust the import statistics to reflect ex-factory prices, asserting all costs associated with the cost of importation should remain in the value used, such as customs duties, brokerage and handling fees and licensing fees. *Domestic Industry's Comments on the Commerce Department's Remand Results ("Domestic Industry's Brief")* at 3-15.

■ Commerce concurs with the domestic industry in that Commerce requests a remand so that it may rely only upon the Indian tariff category for non-alloy pig iron containing less than 0.5 percent phosphorus as a surrogate value for pig iron used to produce castings in the People's Republic of China ("PRC"). However, Commerce argues that there is no evidence on the record which suggests that the government of India exerts control over the import price of pig iron *into* India. In addition, Commerce asserts it properly did not include costs for customs duties and other possible add-ons in the price of pig iron imported into India. *Defendant's Response to Plaintiffs' Comments upon Commerce's Final Results of Redetermination ("Defendant's Brief")* at 2-12.

This Court agrees with Commerce and, for the reasons set out below, remands this issue for Commerce to rely only upon the Indian tariff category for non-alloy pig iron containing less than 0.5 percent phosphorus as a surrogate value for pig iron used to produce castings in the PRC.

This Court remanded this case to Commerce with the following instructions regarding the use of Indian pig iron and scrap prices:

Commerce has not adequately refuted plaintiffs' allegations of subsidies and government involvement in the industry. Therefore, this case is remanded to Commerce to reconsider its use of Indian pig iron and scrap iron prices to value Sigma's and Guangdong Minmetals' foreign market value.

*Sigma Corp.*, 17 CIT at ——, 841 F.Supp. at 1279.

On remand, Commerce reversed its position. It determined it should rely upon publicly available published import statistics of pig and scrap iron imported into India. *Remand Results* at 2–5. The primary reason Commerce considers import statistics to be a preferable source of obtaining information for the purpose of valuing a respondent's factors of production is that the data is published, whereas actual prices are not. *Id.* This Court has repeatedly upheld reliance upon import statistic data as a reasonable surrogate value. *See, e.g., Tehnoimportexport v. United States*, 16 CIT 13, 783 F.Supp. 1401 (1992).

Commerce relied upon two basket categories of import prices for non-alloy pig iron, the tariff category containing greater than 0.5 percent phosphorus and the tariff category containing less than 0.5 percent phosphorus. In relying upon this data, Commerce failed to properly consider whether using both categories was reasonably reflective of the price of pig iron used to manufacture castings in the PRC. *Defendant's Brief* at 3. The content of phosphorus in pig iron is significant because the higher the phosphorus content, the more brittle and less usable for iron castings the pig iron will be. The maximum strength obtained is from pig iron containing 0.25 to 0.40 percent phosphorus. U.S. Steel, *The Making, Shaping and Treating of Steel* 1222–23 (10th ed.); *Defendant's Brief* at 4–5. Accordingly, this Court finds that it would not be reasonable to value the pig iron used to produce castings in the PRC using a basket category of prices that includes pig iron containing greater than 0.5 percent phosphorus.

■ Further, this Court finds Commerce properly did not include costs for customs duties and other add-ons because, with regard to duties and indirect taxes, India operates a duty draw back system that rebates the amount of duties paid on input materials when the finished product is re-exported. *See Sigma Corp.*, 17 CIT at —— ——, 841 F.Supp. at 1278–79. Because Commerce is seeking to obtain a surrogate value for the finished product as exported, Commerce properly presumed that any duties and indirect taxes collected upon importation into India are rebated upon exportation of the finished product. Further, defendant-intervenors have presented no evidence to demonstrate that any other additions, aside from freight, are made to the price of pig iron imported into India.

In all other respects, this Court affirms Commerce's choice of surrogate value in Indian import statistics and finds domestic industry's arguments to be without merit. *See Tehnoimportexport*, 16 CIT 13, 783 F.Supp. 1401.

Therefore, this Court hereby remands this issue for Commerce to eliminate from its surrogate value for pig iron used to produce castings in the PRC the Indian tariff category of pig iron containing greater than 0.5 percent phosphorus content.

### 2. Inland Freight Calculations

■ This Court remanded this issue with instructions that Commerce recalculate freight costs using the information on record which was submitted by respondents, rather than best information available. *Sigma Corp.*, 17 CIT at ——, 841 F.Supp. at 1280.

Accordingly, on remand, Commerce divided each of the "data zone" freight rates used in the final results by the maximum number of kilometers to which each such freight rate applied to arrive at metric ton per kilometer rates. Commerce then multiplied the appropriate rate so calculated by each distance provided by plaintiffs to arrive at the freight costs used in calculations of foreign market

value and United States price. *Remand Results* at 7.

Guangdong asserts that, because Indian import statistics are based on cost and freight values, freight on material inputs must be adjusted to avoid double counting of freight. These statistics already include inland freight from the factory to the port in the country of exportation and ocean freight from the country of exportation to India. Guangdong asserts that to additionally include inland freight in India, from the port to the factory, is to double count freight. Guangdong requests a remand for Commerce to remove the "freight cost" column in the calculation of foreign market value (thereby not separately adding freight to the input values) or by adding actual freight to the values and then deducting the freight element that is in the import statistics. *Guangdong's Brief* at 2–6.

Domestic industry asserts Commerce properly added freight costs to the import data because the freight costs included in the import statistics do not include the inland freight costs of getting the materials from the port in India to the foundry. *Domestic Industry's Response to Guangdong Minmetals' Comments on Commerce Department's Remand Results ("Domestic Industry's Response")* at 2–3. Commerce echoes the argument made by domestic industry. *Defendant's Brief* at 12–16.

This Court agrees with Commerce and the defendant-intervenors. The import statistics do not include all the freight costs incurred to get the materials to the factory door. As the freight costs only include the inland freight in the exporting country and the ocean freight to get the materials from the exporting port to the Indian port, Commerce acted reasonably in adding the Indian inland freight costs of getting the materials from the port in India to the foundry. Therefore, this Court hereby affirms Commerce's action on this issue.

### 3. Best Information Available

■ This Court remanded this issue with instructions that Commerce assess antidumping duties for Machimpex at the 11.66 percent deposit rate paid upon importation as Machimpex was not given adequate notice that it was subject to review. *Sigma Corp.,* 17 CIT at ——, 841 F.Supp. at 1283.

Accordingly, on remand, Commerce complied with the order of the Court. *Remand Results* at 7–9.

Because this Court remanded this case only for Commerce to reconsider the value of pig iron and scrap for exports, to recalculate freight costs and to change the assessment of duties against Machimpex, and because no parties have challenged the BIA rate in this proceeding, domestic industry asserts the current BIA rate must stand. Domestic industry contends that once this judgment is made final and liquidation is no longer suspended, all entries, other than those from Guangdong or Machimpex, should be liquidated at the BIA rate of 92.74 percent. *Domestic Industry's Brief* at 15–16.

Commerce agrees that, because the all-others rate was not challenged before the Court following issuance of the final results of review, it is not subject to revision now. *Defendant's Brief* at 16.

The Court fails to see why this issue was raised, but agrees with domestic industry and Commerce. Thus, this Court affirms Commerce's compliance with its remand instructions. *See Sigma Corp.,* 17 CIT at ——, 841 F.Supp. at 1283.

### Conclusion

In accordance with the foregoing opinion, this Court, after due deliberation and a review of all papers in this action, hereby remands this case to Commerce to eliminate from its surrogate value for pig iron used to produce castings in the People's Republic of China the Indian tariff category of pig iron containing greater than 0.5 percent phosphorus content. In all other respects, Commerce acted in accordance with law and was supported by substantial evidence and this case is dismissed.

### JUDGMENT

Upon consideration of the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand filed in this case, *Final Remand Deter-*

*mination Concerning Iron Construction Castings from the People's Republic of China Pursuant to Slip Op. 93–238* ("Remand Results"), and the Court having examined all comments filed in regard to the Remand Results, it is hereby

ORDERED that this case is further remanded to Commerce to eliminate from its surrogate value for pig iron used to produce castings in the People's Republic of China the Indian tariff category of pig iron containing greater than 0.5 percent phosphorus content; and it is further

ORDERED that, the Remand Results in all other respects having been affirmed by this Court, upon Commerce's adjustment to surrogate value as ordered above, this case is dismissed.