**SIGMA CORPORATION, U.V. International, Southern Star, Inc., City Pipe and Foundry, Inc. and Long Beach Iron Works; Overseas Trade Corporation; D & L Supply Co.; Deeter Foundry Inc., Alhambra Foundry, Inc., Allegheny Foundry, Co., Bingham & Taylor Division, Virginia Industries Inc., Campbell Foundry Co., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., Le-**

Baron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Pinkerton Foundry Inc., Tyler Pipe Industries Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc., Plaintiffs,

v.

UNITED STATES, Defendant,

D & L Supply Co.; Deeter Foundry, Inc., et al., Defendants–Intervenors.

SIGMA CORPORATION, Southern Star, Inc., City Pipe and Foundry, Inc. and Long Beach Iron Works, Inc.; Overseas Trade Corporation; Guangdong Metals & Minerals Import & Export Corporation; U.S. Foundry & Manufacturing Co., Alhambra Foundry, Inc., Allegheny Foundry, Co., Bingham & Taylor Division, Virginia Industries Inc., Charlotte Pipe & Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Le-Baron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc. and Vulcan Foundry, Inc., Plaintiffs,

U.V. International, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

Guangdong Metals & Minerals Import & Export Corporation; U.S. Foundry and Manufacturing Co., et al., Defendant–Intervenors.

D & L Supply Co. and Guangdong Metals & Minerals Import & Export Corporation; U.V. International, Sigma Corporation, Southern Star, Inc., City Pipe and Foundry, Inc. and Long Beach Iron Works, Inc.; Overseas Trade Corporation, Plaintiffs,

United States, Defendant,

Alhambra Foundry, Co., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Charlotte Pipe & Foundry Co., East Jordan Iron Works,

Inc., LeBaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc., Defendant–Intervenors.

Slip Op. 96–111.
Court Nos. 91–02–00154, 92–04–00283 and 92–06–00424.

United States Court of International Trade.

July 15, 1996.

Ross & Hardies, Jeffrey S. Neeley, Washington, DC, for plaintiff Overseas Trade Corporation.

White & Case, Walter J. Spak and Vincent Bowen, Washington, DC, for plaintiffs Sigma Corporation, Southern Star, Inc., City Pipe and Foundry, Inc., Long Beach Iron Works and plaintiff/plaintiff-intervenor U.V. International.

Cameron & Hornbostel, Dennis James, Jr., Washington, DC, for plaintiff and defendant-intervenor D & L Supply Company, plaintiff/defendant-intervenor Guangdong Metals & Minerals Import & Export Corporation.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Mary T. Staley and Robin H. Gilbert, Washington, DC, for plaintiffs/defendants-intervenors Deeter Foundry, Inc., Al-

hambra Foundry, Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Campbell Foundry Co., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., LeBaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Pinkerton Foundry Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Velta A. Melnbrencis, Paul M. Herrup and Cynthia B. Schultz (Jeffrey C. Lowe and Robert J. Heilferty, Attorney–Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel), Washington, DC, for defendant.

## OPINION

TSOUCALAS, Judge:

Pursuant to Rule 68[1] of this Court, plaintiff, Overseas Trade Corporation ("Overseas"), has filed for an award for costs, attorneys' fees and expenses under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 (1994), together with interest pursuant to 26 U.S.C. § 6621 (1994). For convenience, because similar issues of law and fact are involved, plaintiff's application includes the combined costs and expenses incurred in Consolidated Court Nos. 91–02–00154, 92–0400283 and 92–06–00424.

### Background

On May 13, 1985, the United States Department of Commerce, International Trade Administration ("Commerce") was petitioned by the Municipal Castings Fair Trade Council ("MCFTC"), a trade association representing domestic producers of iron construction castings ("castings"), and fif-

---

1. Rule 68(a) of the Court Rules provides that the "court may award attorney's fees and expenses where authorized by law."

teen individually-named members of the association to investigate imports of certain iron construction castings from the People's Republic of China ("PRC"). Petitioners believed that imports of castings from the PRC are being, or are likely to be, sold in the United States at less than fair value ("LTFV") and are materially injuring the United States castings industry or threatening it with material injury. Finding the petition sufficient, Commerce conducted an antidumping investigation of exports of PRC castings during the period December 1, 1984 through May 31, 1985. The final determination reached in the LTFV investigation was published in *Certain Iron Construction Castings From the People's Republic of China; Final Determination of Sales at Less Than Fair Value ("LTFV Investigation Results")*, 51 Fed.Reg. 9,483 (March 19, 1986). The LTFV Investigation Results established a dumping margin of 11.66% *ad valorem* for all PRC producers, manufacturers and exporters. *Id.* at 9,485. After Commerce made its dumping finding and the International Trade Commission issued a final affirmative determination of threat of material injury, Commerce issued an antidumping duty order on iron construction castings from the PRC. *Antidumping Duty Order; Iron Construction Castings From the People's Republic of China (the PRC)*, 51 Fed.Reg. 17,222 (May 9, 1986).

No administrative review of the imported PRC castings was requested for the first review period—October 28, 1985 through April 30, 1987. However, reviews were sought and conducted for the second and third periods of review—May 1, 1987 through April 30, 1988 and May 1, 1988 through April 30, 1989. In a consolidated determination, Commerce preliminarily established dumping margins for all unnamed branches of the PRC corporations reviewed of 47.54% for the 1987–88 review period and 97.57% for the 1988–89 period. These margins were calculated utilizing best information available ("BIA"). *Iron Construction Castings From*

*the People's Republic of China; Preliminary Results of Antidumping Duty Administrative Review ("Preliminary Results")*, 55 Fed.Reg. 22,939 (June 5, 1990). Subsequently, a final determination was published in *Iron Construction Castings From the People's Republic of China; Final Results of Antidumping Duty Administrative Review ("Final Results")*, 56 Fed.Reg. 2,742 (Jan. 24, 1991). The Final Results "calculated a weighted-average margin for all imports of the subject merchandise by applying the highest margin calculated for any responding branch of the China National Metals and Minerals Import and Export Corporation to the imports of the non-responsive firms." *Final Results*, 56 Fed.Reg. at 2,749. The resulting margins were 24.21% for 1987–1988 and 45.92% for 1988–1989, applicable to all exports of iron construction castings from the People's Republic of China. *Id.*

Overseas challenged the Final Results, 56 Fed.Reg. at 2,749, in Consolidated Court No. 91–02–00154. The Court reviewed Overseas' claims in this case in *Sigma Corp. v. United States*, 17 CIT 1288, 841 F.Supp. 1255 (1993), and remanded the case to Commerce. Commerce's redetermination pursuant to Court remand was reviewed in *Sigma Corp. v. United States*, 19 CIT ——, 890 F.Supp. 1077 (1995).

In Consolidated Court No. 92–04–00283, Overseas challenged Commerce's final determination entitled *Final Results of Antidumping Duty Administrative Review: Certain Iron Construction Castings From the People's Republic of China ("Final Results")*, 57 Fed.Reg. 10,644 (Mar. 27, 1992). These Final Results covered the fourth period of review ("POR") May 1, 1989 through April 30, 1990 and examined one exporter, the Guangdong Branch of China National Metals and Minerals Import and Export Corporation ("Minmetals Guangdong"). No other named exporters responded to Commerce's questionnaire. For exporters not responding to the questionnaire, Commerce applied BIA utilizing the highest margin cal-

culated in the review, *i.e.*, the margin calculated for Minmetals Guangdong. *Id.* The Court reviewed Overseas' claims concerning these Final Results in *Sigma Corp. v. United States,* 17 CIT 1358, 841 F.Supp. 1275 (1993); *see also Sigma Corp. v. United States,* 19 CIT ——, 888 F.Supp. 159 (1995).

In Consolidated Court No. 92–06–00424, Overseas contested *Certain Iron Construction Castings From the People's Republic of China; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 57 Fed.Reg. 24,245 (June 8, 1992). These Final Results covered the fifth POR May 1, 1990 through April 30, 1991. Questionnaires were forwarded to nine PRC manufacturers/exporters of the subject merchandise for this period. Two companies reported no shipments during the POR and the other seven, including Minmetals Guangdong, failed to respond. Therefore, Commerce utilized BIA for all companies. *Id.* The Court reviewed Overseas' challenge to these Final Results in *D & L Supply Co. v. United States,* 17 CIT 1419, 841 F.Supp. 1312 (1993); *see also D & L Supply Co. v. United States,* 19 CIT ——, 888 F.Supp. 1191 (1995).

The facts in Consolidated Court Nos. 91–02–00154, 92–04–00283 and 92–06–00424 are virtually identical. In all three cases, the Court found that one respondent, China National Machinery Import and Export Corporation, Liaoning ("MACHIMPEX Liaoning" or "Liaoning"), a PRC producer from which Overseas purchased iron construction castings during the PORs in question, is not within the scope of the relevant Commerce determinations and its duties are to be assessed at the 11.66% deposit rate that it paid upon importation. *Sigma Corp.,* 17 CIT at 1298, 841 F.Supp. at 1264; *Sigma Corp.,* 17 CIT at 1368, 841 F.Supp. at 1283; *D & L Supply Co.,* 17 CIT at 1424, 841 F.Supp. at 1316.

*Discussion*

Overseas has submitted an application for an award of $46,454.84 reflecting the costs, attorneys' fees and expenses which were incurred in pursuing judicial review of the Final Results, 56 Fed.Reg. at 2,742 (Consolidated Court No. 91–02–00154), 57 Fed.Reg. 10,644 (Consolidated Court No. 92–04–00283) and 57 Fed.Reg. 24,245 (Consolidated Court No. 92–06–00424).[2]

Commerce asserts that Overseas is not entitled to an award for costs and expenses and even if Overseas prevails in gaining an award, it is not entitled to an award in the amounts sought. Def.'s Resp.Opp.Pl.'s Applic.Fees/Expenses and Mot.Costs (Consolidated Court No. 91–02–00154). *See also* Def.'s Resp.Opp.Pl.'s Applic.Fees/Expenses and Mot.Costs (Consolidated Court No. 92–04–00283) and Def.'s Resp.Opp.Pl.'s Applic.Fees/Expenses and Mot.Costs (Consolidated Court No. 92–06–00424).

*Substantial Justification*

Title 28 U.S.C. § 2412(a)(1) provides that the prevailing party in a civil action against the United States, agency or official thereof, may be awarded a judgment, taxable against the United States, for the costs incurred in the litigation, as enumerated in section 1920, other than attorneys' fees and expenses. Subsection (b) of § 2412 allows the court to award reasonable fees and expenses of attorneys to the prevailing party, in addition to the costs allowable under subsection (a).

■ The Court notes, however, that "a statute authorizing the recovery of attorneys' fees and expenses from an agency of the United States constitutes a waiver of sovereign immunity, and must be strictly construed." *United States v. Modes, Inc.,* 18 CIT 153, ——, Slip Op. 94–39 at 4, 1994 WL 88927 (Mar. 4, 1994) (citing *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)).

The EAJA also provides:

**2.** On August 11, 1995, Overseas filed a combined application for award of attorneys' fees and expenses and combined motion for judgment on

costs. On October 4, 1995, Overseas filed a revised combined application for fees and other expenses and motion for judgment on costs.

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

28 U.S.C. § 2412(d)(1)(A) (emphasis added). Hence, in order to award the costs, fees and expenses sought by Overseas, the Court must determine that the position of the United States in the underlying actions was not substantially justified and special circumstances do not exist which would make an award unjust.[3]

■ The "government bears the burden of establishing that its position was substantially justified or that special circumstances should preclude an award under the EAJA." *Traveler Trading Co. v. United States,* 13 CIT 380, 381, 713 F.Supp. 409, 411 (1989). *See also Covington v. Department of Health & Human Services,* 818 F.2d 838, 839 (Fed. Cir.1987). If the Government is unable to carry its burden, the court must award the requested fees and expenses. *Traveler,* 13 CIT at 381, 713 F.Supp. at 411. *See also Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1569 (Fed.Cir.1987). Thus, the Court must decide whether Commerce has met its statutory burden.

The Supreme Court of the United States has found that the phrase "substantial justification" means:

"justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). *See also Urbano v. United States,* 15 CIT 639, 641, 779 F.Supp. 1398, 1401 (1991), *aff'd,* 985 F.2d 585 (1992). Thus, the Government is required to show that it "was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts. The Government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.'" *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (quoting *Gava v. United States,* 699 F.2d 1367, 1375 (Fed.Cir. 1983) (Baldwin, J., dissenting)). *See also Brewer,* 814 F.2d at 1569.

In Consolidated Court No. 91–02–00154, Overseas argued that MACHIMPEX Liaoning was not subject to the preliminary BIA rates of 47.54% rate established for the 1987–88 review and 97.57% established for the 1988–89 period since MACHIMPEX Liaoning is a separate and distinct company from other companies bearing the MACHIMPEX (China National Machinery Import and Export Corporation) name. Overseas also argued that MACHIMPEX, not MACHIMPEX Liaoning, was (1) named by petitioner, (2) listed in Commerce's notice of initiation of administrative reviews, and (3) issued a Commerce questionnaire.[4] *Sigma,* 17 CIT at 1296, 841 F.Supp. at 1262. According to Overseas, best information available should not have been applied to MACHIMPEX Liaoning as a non-responsive company for the purpose of calculating foreign market value. *See Sigma,* 17 CIT at 1295–96, 841 F.Supp. at 1261–62. The Court found that Liaoning had not been afforded an opportuni-

---

**3.** It is uncontroverted that Overseas is a "prevailing party" under 28 U.S.C. § 2412.

**4.** In *Sigma,* 17 CIT at 1288, 841 F.Supp. at 1255, the Court described the facts surrounding the

identification of companies for review during this POR. The Court stated:

On May 26, 1988, counsel for the MCFTC requested Commerce to institute an administrative review of certain companies for the

ty to establish that it is an independent legal entity and application of BIA was improper because Liaoning had not refused or been unable to supply the information Commerce required. It simply had not received a questionnaire. *Id.* at 1296–98, 841 F.Supp. at 1262–63. In addition, the Court found that petitioners' request for review was unclear and not understandable from the record. Although petitioners' request listed several branches of Minmetals, it merely listed MACHIMPEX but not any of its branches. The Court concluded that petitioners' request had not intended to include Liaoning. Furthermore, petitioners' subsequent correspondence to Commerce seeking clarification regarding the companies to be reviewed related only to branches of Minmetals, not MACHIMPEX. The Court concluded that petitioners' request had not included Liaoning. Accordingly, the Court found that inadequate notice had been given MACHIMPEX Liaoning and ordered it assessed at the 11.66% deposit rate paid upon importation. *Id.* at 1298, 841 F.Supp. at 1263–64.

An examination of the merits of Consolidated Court Nos. 91–02–00154, 92–04–00283 and 92–06–00424 satisfies the Court that Commerce's position in all three cases, although ultimately unsuccessful, was substantially justified, had a reasonable basis in law and fact and was undertaken in good faith.

■ First, it is Commerce's established practice to presume that all entities in a nonmarket economy ("NME") country export under the control of the state. *See, e.g., Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt–Weld Pipe Fittings From the People's Republic of China,* 57 Fed.Reg. 21,058, 21,059 (May 18, 1992); *Final Results,* 56 Fed.Reg. at 2,742; *Final Determinations of Sales At Less Than Fair Value: Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 56 Fed.Reg. 241 (Jan. 3, 1991). Under this presumption, Commerce assigns a unitary country-wide antidumping margin in NME countries unless an exporter affirmatively demonstrates entitlement to a separate, company-specific margin by establishing freedom from central government control, both in law and in fact, with respect to exports. *See Notice of Final Determination of Sales at Less Than Fair Value: Silicon Carbide From the People's Republic of China,* 59 Fed.Reg. 22,585 (May 2, 1994); *Final Determination of Sales at Less Than Fair Value: Sparklers From the People's Republic of China,* 56 Fed.Reg. 20,588, 20,589 (May 6, 1991). The Court has recognized Commerce's "presumptive single entity" policy which accounts for the fact that state-controlled companies have an identity as a totality or conglomeration which is elusive and requires NME trad-

1987–88 review period. In its subsequent notice of initiation of antidumping and countervailing duty administrative reviews, Commerce named the companies it was reviewing including MACHIMPEX and Minmetals Beijing [China National Metals & Minerals Import & Export, Beijing]. On July 26, 1988, Commerce directed the sending of questionnaires to several firms including MACHIMPEX, Beijing. No such questionnaire was sent to MACHIMPEX, Liaoning.

On October 4, 1988, counsel for MCFTC filed a letter with Commerce to clarify the exact companies that were to be reviewed. The letter specifically requested clarification regarding Minmetals and not MACHIMPEX. The letter objected to Commerce's serving questionnaires only upon the Beijing and Guangdong branches of Minmetals and not on any of the other Minmetals companies. The letter stated that the request for review "was not limited to any particular branch of Minmetals, but identified the whole corporate entity." This request was based on the understanding

that five branches of Minmetals were engaged in the export of the subject merchandise to the United States. No such clarification was requested or made regarding MACHIMPEX.

On May 31, 1989, the MCFTC similarly requested an administrative review for the 1988–89 review of eight specific companies including the Beijing branch of Minmetals, the Guangdong branch of Minmetals, the Liaoning branch of Minmetals, the Jilin branch of Minmetals, the Anhui branch of Minmetals, and MACHIMPEX. MACHIMPEX Liaoning was not specifically mentioned. On June 21, 1989, Commerce subsequently published its notice of initiation of the antidumping and countervailing duty administrative review in the Federal Register listing each of the above companies, but not MACHIMPEX Liaoning. On June 26, 1989, Commerce sent a questionnaire to MACHIMPEX, but none was sent to MACHIMPEX Liaoning.

*Sigma,* 17 CIT at 1295–96, 841 F.Supp. at 1262 (citations omitted).

ing companies to pass the *de jure/de facto* test to gain a separate rate. *See UCF Am., Inc. v. United States,* 20 CIT ——, ——, 919 F.Supp. 435, 440 (1996); *UCF Am., Inc. v. United States,* 18 CIT 1074, ——, 870 F.Supp. 1120, 1126 (1994). *See also Tianjin Mach. Import & Export Corp. v. United States,* 16 CIT 931, 934–37, 806 F.Supp. 1008, 1013–15 (1992). In view of this practice, Commerce's posture that Liaoning was includable in the scope of the reviews in question is reasonable, notwithstanding that the Court ultimately found that MACHIMPEX Liaoning was excludable from the scope of these reviews because it had not received adequate notice.

This conclusion is supported by the facts surrounding the original LTFV investigation. In the LTFV review, Commerce issued questionnaires to, received responses from, and conducted verification for MACHIMPEX, Minmetals and China National Machinery Import & Export Corp. *See LTFV Investigation Results,* 51 Fed.Reg. at 9,484. In *Sigma,* Consolidated Court No. 91–02–00154, the Court recognized that petitioners requested administrative review of certain PRC companies, that Commerce named MACHIMPEX in its initiation of review notice, and that MACHIMPEX received a questionnaire. *Sigma* at 1295–96, 841 F.Supp. at 1262. Hence, MACHIMPEX was aware of the investigation, participated in it, was found to be selling LTFV castings and was assigned a margin of 11.66%. In addition, *Sigma* took notice of Overseas' statement that, "at one time, Liaoning was connected with the national headquarters in Beijing." *Id.* at 1295, 841 F.Supp. at 1261.

Although, in Consolidated Court No. 91–02–00154, the Court observed that "[i]n view of the extent of information submitted, it does not appear that MACHIMPEX Liaoning has met its burden of proof to establish their independence from MACHIMPEX," the Court found that Liaoning was never afforded an adequate opportunity to do so. *Id.* at 1297, 841 F.Supp. at 1263.[5] According to Commerce, the "logical inference would be that there was no basis for deviation from the conclusion established in the original investigation that MACHIMPEX and its branches constituted a unitary entity." Def.'s Resp. Opp. Pl.'s Applic. Fees/Expenses and Mot. Costs at 10. However, legitimate as Commerce's NME policy is, the facts particular to *Sigma,* as noted in the Court's discussion above, compelled a different conclusion. The significant factor was the absence of *notice*—not the Court's assessment, based on record evidence on hand, that Liaoning appeared not to have rebutted Commerce's single entity presumption. Had it not been indicated that Liaoning was omitted from these reviews, it would have been incumbent upon Liaoning to create an adequate record. Liaoning was not afforded this opportunity.

Furthermore, according to 19 U.S.C. § 1677e(c) (1988):

(c) **Determinations to be made on best information available**

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and

in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

---

**5.** Overseas and Liaoning relied on two documents to support the claim of independence from MACHIMPEX. The Court stated:

The first is a letter from Overseas which states that "each branch of China National Machinery is an independent company. Each branch has its own customers and independently sets its prices." The second piece of evidence submitted by Overseas is an October 11, 1990 letter from the Chinese Ministry of Foreign

Economic Relations and Trade to Secretary Mosbacher which is not a part of the administrative record.

"Regardless of the propriety of reliance on this letter, the October 11 letter provides no specific information but instead states that all Chinese local trading companies were separated from the national trading companies." *Sigma,* 17 CIT at 1297, 841 F.Supp. at 1263 (citations omitted).

Thus, the statute authorizes Commerce to use BIA whenever a party is unable or does not provide Commerce the information necessary to make its determination. *Id.* In *Sigma,* Consolidated Court No. 91–02–00154, the Court found Commerce's application of BIA to Liaoning as an unresponsive company improper because "Liaoning never refused and was never unable to supply the information." *Sigma,* 17 CIT at 1298, 841 F.Supp. at 1263. Simply, Liaoning was never afforded the opportunity to establish its independence. Nevertheless, Commerce's position, based on its single entity policy, reasonably led it to believe that BIA was properly applicable to Liaoning as MACHIMPEX had not responded to Commerce's questionnaire. *See Final Results,* 56 Fed.Reg. at 2,744.[6]

Overseas' arguments and the Court's reasoning was similar in Consolidated Court Nos. 92–04–00283 and 92–06–00424 which are also covered by Overseas' application and motion. In these cases, the Court likewise ordered Liaoning's duties assessed at the 11.66% deposit rate it paid upon importation. *Sigma Corp.,* 17 CIT at 1365–68, 841 F.Supp. at 1281–83; *see also Sigma Corp.,* 19 CIT at ——, 888 F.Supp. at 163; *D & L Supply Co.,* 17 CIT at 1423–24, 841 F.Supp. at 1315–16; *see also D & L Supply Co.,* 19 CIT at ——, 888 F.Supp. at 1197.

Overseas argues that Commerce persisted in litigating this matter although its position was wholly without foundation and in bad faith. Def.'s Resp.Opp.Pl.'s Applic.Fees/Expenses and Mot.Costs at 9–10, 12–13. "Fees and expenses are generally awarded where the government offers 'no plausible defense, explanation, or substantiation for its action.'" *Consolidated Int'l Automotive, Inc. v. United States,* 16 CIT 692, 696, 797 F.Supp. 1007, 1011 (1992) (citations omitted). While the Court found Overseas' position in Consolidated Court Nos. 91–02–00154, 92–04–00283 and 92–06–00424 more convincing, it is not the case that Commerce offered no defense or

explanation. Commerce's general NME policy was the foundation for its actions and the Court will not infer bad faith on Commerce's part for the position it took and the course which it pursued. *See Bonanza Trucking Corp. v. United States,* 11 CIT 436, 441, 664 F.Supp. 1453, 1457 (1987) (attorneys' fees awards under 28 U.S.C. § 2412(b) are made "when the unsuccessful party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons'") (citation omitted). The court in *Bonanza Trucking,* 11 CIT at 442, 664 F.Supp. at 1458, made it clear that bad faith is not to be lightly inferred for purposes of attorneys' fees awards under 28 U.S.C. § 2412(b). The bad faith exception applies "'only in exceptional cases and for dominating reasons of justice.'" *United States v. Standard Oil Co. of California,* 603 F.2d 100, 103 (9th Cir.1979) (citing 6 J. Moore, Federal Practice ¶ 54.77[2], pp. 1709–10 (2d ed. 1972)). Neither of these circumstances exists here.

In addition, one of Commerce's legitimate concerns in the NME context is that a national company subject to a dumping order may attempt to circumvent the order by funnelling exports to the United States through trading companies over which it exercises central control. It is clear in the cases in question that Commerce's conduct proceeded with the purpose of efficiently enforcing U.S. trade laws. In *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed.Cir.), *cert.denied,* 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988), the appellate court noted that:

> [T]he EAJA was not intended to be an automatic fee-shifting device in cases where the petitioner prevails.... [S]ubstantial justification is to be decided case-by-case on the basis of the record. *Gavette,* 808 F.2d at 1467. The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified. *Broad Ave. Laundry & Tailoring v. United*

---

6. Of eight PRC castings producers and exporters, only the Beijing and Guangdong branches of the China National Metals and Minerals Import and Export Corporation (Minmet Beijing and Guang-

dong Minmetals, respectively) responded to Commerce's questionnaire. *See Final Results,* 56 Fed.Reg. at 2,744.

*States,* 693 F.2d 1387, 1391 (Fed.Cir.1982). The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA "prism," *see Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986), not by redundantly applying whatever substantive rules governed the underlying case.

Furthermore, in light of the special circumstances surrounding the cases at bar, it would be unjust to award Overseas the monies sought. Commerce conducted the subject administrative reviews after it was petitioned to enforce U.S. trade law in the context of a nonmarket economy country which is in rapid transition—in terms of legal structure and business practices in some economic sectors and regions of the PRC. Where relatively few sources of reliable information exist from which to gain an accurate current picture, Commerce reasonably relies on the proactive involvement of those whose interest might be affected in the course of enforcement of U.S. trade laws. Thus, normally, NME exporters considering themselves independent entities would take the prudent precaution of monitoring developments in U.S. governmental regulation of trade capable of affecting their interests. Notwithstanding the Court's finding in favor of Overseas in the two *Sigma Corp.* cases (Consolidated Court Nos. 91–02–00154 and 92–04–00283) and the *D & L Supply Co.* case (Consolidated Court No. 92–06–00424), the special circumstances involved, including Commerce's NME policy and the nature of the PRC economy and society, it would be unjust to award Overseas the costs and fees it seeks.

In sum, Commerce's good faith posture in these cases, although ultimately found insupportable, was based on an acceptable basis both in law and fact and special circumstances make an award of attorneys' fees unjust. Inasmuch as special circumstances exist and Commerce's good faith position was substantially justified, Overseas is not entitled to an award of costs, attorneys' fees and expenses.

*Conclusion*

It is clear to the Court that Commerce's position in the cases at bar was substantially justified. Therefore, an award of attorneys' fees, expenses and costs under the EAJA is inappropriate. Accordingly, Overseas' consolidated application and motion for a combined award of $46,454.84, with interest, for costs, attorneys' fees and expenses, incurred in Consolidated Court Nos. 91–02–00154, 92–0400283 and 92–06–00424 are denied.