OLYMPIA INDUSTRIAL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND
WOODINGS-VERONA TOOL WORKS, INC., DEFENDANT-INTERVENOR

Consolidated Court No. 95–10–01339

(Dated April 10, 1997)

*Graham & James (Lawrence R. Walders, Andrea Fekkes Dynes, Jeffery B. Denning)*, for plaintiff Olympia Industrial, Inc.
*Frank W. Hunger*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Lesleyanne Koch Kessler)*; Office of the Chief Counsel for Import Administration, United States Department of Commerce *(Karen L. Bland)*, of counsel, for defendant.
*Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, Willis S. Martyn III)*, for defendant-intervenor Woodings-Verona Tool Works, Inc.

## OPINION

GOLDBERG, *Judge:* Plaintiff, Olympia Industrial, Inc. ("Olympia"), a United States importer, and defendant-intervenor, Woodings-Verona Tool Works, Inc. ("Woodings"), petitioner in the challenged agency determination, commenced this consolidated action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c) (1988) seeking judicial review of certain portions of the final results of the United States Department of Commerce's ("Commerce") second administrative review covering the period February 1, 1992 through January 31, 1993 in *Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, from the People's Republic of China*, 60 Fed. Reg. 49,251 (Sept. 22, 1995) (final admin. review) ("Final Determination").

In the Final Determination, because the People's Republic of China ("PRC") is a non-market economy, Commerce selected India as the surrogate country in order to evaluate the costs of production in the PRC pursuant to 19 U.S.C. § 1677b(c)(1) (1988).

Olympia and Woodings each challenge Commerce's Final Determination on different grounds. Olympia challenges Commerce's Final Determination on the grounds that Commerce erred when it (1) used surrogate country data to value the steel input when import data for the PRC was available, and (2) calculated inland freight expenses based on the longest distance between input suppliers to factory. Because the Court finds that both of these challenges have merit, it remands Commerce's Final Determination with respect to each.

Woodings challenges Commerce's Final Determination on the grounds that Commerce erred when it (1) rejected certain Indian surrogate data based on a comparison of data from other market economy countries, and (2) valued shipping pallets that were assembled by the importer's suppliers based on surrogate data for the value of a finished pallet. With respect to both issues raised by Woodings, the Court affirms Commerce's Final Determination.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988).

### STANDARD OF REVIEW

An administrative review determination by the Department of Commerce in an antidumping investigation shall be upheld unless the Court determines that the determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1988).

The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

### DISCUSSION

A. *Olympia's Challenges:*

1. *Import Data for Steel Input Valuation:*

Olympia challenges Commerce's Final Determination on the grounds that Commerce failed to satisfy its statutory obligation under 19 U.S.C. § 1677b(c)(1) (1988), to first determine that no market-oriented information was available in the administrative record, before it resorted to a "factors of production" methodology involving surrogate country data. *See Antidumping Duties; Countervailing Duties: Notice of Proposed Rulemaking and Request for Public Comments*, 61 Fed. Reg. 7308, 7344–45 (February 27, 1996) ("Proposed Rulemaking") (Commerce interprets 19 U.S.C. § 1677b(c)(1) to require valuation of inputs based on the prices paid to market economy suppliers if this data is available, rather than based on the prices derived from a surrogate country.). Olympia further asserts that the decision to select surrogate country data over import data is inconsistent with the past practices of Commerce. *Id.*

Commerce has developed a practice of utilizing import data to value inputs where a non-market economy producer uses inputs which are (1) obtained from a market economy producer, and (2) paid for in a market economy currency. *Id.* at 7344 (summarizing Commerce's past practice). The use of market-import data, when available, better satisfies the general purpose of the antidumping statute to "determine margins as accurately as possible." *Oscillating Fans and Ceiling Fans From the People's Republic of China*, 56 Fed. Reg. 55,271, 55,275 (October 25, 1991) (final determination) (citations omitted); *see also, Lasko Metal Products, Inc. v. United States*, ____ Fed. Cir. (T) ____, ____, 43 F.3d 1442, 1446 (1994); *Proposed Rulemaking*, 61 Fed. Reg. at 7344–45.

In the present case, Commerce justified its decision not to utilize import data on the grounds that it did "not know what models were pro-

duced using the imported steel or the portion of steel used by the factories which was imported." *Final Determination*, 60 Fed. Reg. at 49,254.

The administrative record reveals that Commerce knew that Olympia's suppliers used imported steel in the production process because these suppliers informed Commerce of this as early as December 1993. Letter from Politis, Pollack & Doram on behalf of client Shandong Machinery Import & Export Company to Commerce (December 23, 1993) at 6–7. Yet, Commerce never specifically requested information about what models were produced using imported steel, or the portion of imported steel used by the factories under investigation.

Rather, on at least three occasions, Commerce requested and received information regarding the steel inputs. In its initial questionnaire, Commerce instructed Olympia's suppliers to provide the following information:

> Report whether any input used in the production process is imported. For each imported material, specify the source country, and the actual cost and unit price in the currency paid, including the amounts for any duties, taxes, and transportation costs incurred.

Letter from Commerce to Fujian Machinery & Equipment Corp. (March 24, 1993) at X–3. Later, Commerce requested additional information regarding the types of steel used in the production process, the HTSUS number of each factor input, the specifications of the various types of steel, the gross and net quantity and weight for each factor input, and the source of each material entered into the production process. Letter from Commerce to Fujian Machinery & Equipment Import & Export Corp. (March 14, 1994) at 4–5; letter from Commerce to Shandong Machinery Import & Export Corp. (March 14, 1994) at 4–5. Finally, on May 6, 1994, Commerce asked for further information regarding the types and grades of steel used in the production process. Letters from Commerce to Mr. John N. Politis, Esq., on behalf of clients, Fujian Machinery & Equipment Import & Export Corp. and to Shandong Machinery Import & Export Corp. (May 6, 1994).

The Court agrees with Olympia that, based upon the record evidence, Commerce failed to request information regarding "what models were produced using the imported steel or the portion of steel used by the factories which was imported." *Final Determination*, 60 Fed. Reg. at 49,254. If this information was critical to reaching its Final Determination, Commerce failed to provide notice to Olympia and its suppliers that this was the information it was seeking.

Commerce apparently recognizes its error. Commerce requests a remand in order to reconsider whether it should utilize surrogate country data or PRC import data in order to value steel inputs.

The Court remands this matter to Commerce with instructions to reopen the administrative record to allow the parties to provide the necessary information. The Court further instructs Commerce to either

change its methodology or provide a clearly articulated rationale explaining why it decided not to utilize PRC import data.

2. *Longest Distance Between Input Suppliers and Factory:*

Olympia contends that Commerce erred when it computed the value of the steel input by adding an amount for inland freight expense based on the longest distance between the various PRC steel suppliers and the factories in the PRC. Specifically, Olympia asserts that Commerce ignored evidence in the administrative record reporting specific distances between factories and steel suppliers.

In its Final Determination, Commerce explained that it uses the longest distances as the best information available under 19 U.S.C. § 1677e(b) (1994) in two situations: (1) when the distances between factory and suppliers are not reported, and (2) when figures on the percentage of material purchased from each supplier are not reported. *Final Determination*, 60 Fed. Reg. at 49,257.

Commerce must make a specific request for information before it may rely on the best information available in the administrative record. *Mitsui & Co. v. United States*, 18 CIT 185, 199 (1994).

Based upon a review of the administrative record, the Court finds that Commerce did not specifically request the information it needed, namely the percentages of steel purchased from each supplier, before it resorted to the best information available.

In the present case, Commerce specifically requested the gross quantity and weight of all inputs, the source of all inputs, including the source location, the distances from the sources to the factory, and the means of transportation. Letters from Commerce to Fujian Machinery & Equipment Import & Export Corp. (March 24, 1993) at X-3.

Olympia's suppliers provided responsive answers to all of Commerce's questions. Nevertheless, these responses did not provide the information that Commerce sought because Commerce failed to sufficiently tailor its questions to elicit information regarding the percentage of steel purchased from each supplier.

As a result, the Court remands this matter to Commerce for the purpose of reopening the administrative record to permit parties to submit evidence regarding the percentages of steel used in the production process purchased from each supplier. Based on the additional information, Commerce should develop a simple or weighted average to reflect the contributions of the various suppliers, or provide a clearly articulated rationale explaining why it decided not to utilize this data.

B. *Woodings-Verona's Challenges:*

1. *Surrogate Country Data:*

Woodings challenges Commerce's Final Determination on the grounds that Commerce acted contrary to law by rejecting certain data from India based upon a comparison of data from the United States and Indonesia. In particular, Woodings contends that if data from Indonesia and the United States was inappropriate to use as surrogate data, it was

unreasonable for Commerce to use this data as a benchmark to judge data from the surrogate country. Furthermore, Woodings contends that the rejected Indian data was fully supported and consistent with other Indian data. The Court rejects these arguments.

Woodings invites the Court to substitute its own expertise for that of Commerce in evaluating the selection of the data. The Court declines to do so. Instead, the Court takes its guidance from the standard of review governing this case. Under the substantial evidence standard, the reviewing court may not "even as to matters not requiring expertise * * * displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo." Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

The Court notes that Commerce selected and evaluated the Indian data during a long and deliberative process. Originally, for the preliminary results of the review, Commerce used the average value of steel bars and rods imported into India that would fall under tariff heading 7213.49 of the Harmonized Tariff Schedules of the United States (HTSUS) as its surrogate value for steel. *Final Determination*, 60 Fed. Reg. at 49,254. Later, for the final results, Commerce used forged bars and rods under tariff heading, 7214.50, HTSUS, because this steel is more similar to that used by the PRC manufacturers. *Id.* Commerce then concluded that the 1992 data for this tariff heading was acceptable, but that the 1991 data was aberrational. *Id.*

Commerce reached its decision regarding the 1991 Indian import data by comparing it with import data from other market-economy countries. *Id.* Commerce used international trade data from other market economies at a similar level of development, such as Indonesia, as well as data from economies at higher levels of development, such as the United States, in order to provide some idea of the level of prices in the international steel market in 1991. *Id.*

The Court finds that Commerce acted within its statutory authority when it utilized data from other market economies to aid in its factor of production valuation. 19 U.S.C. § 1677b(c)(1); 19 U.S.C. § 1677b(c)(4). The statute does not require Commerce to follow any single approach in evaluating data. *Lasko Metal Products*, ___ Fed. Cir. (T) at ___, 43 F.3d at 1446. Moreover, Commerce's methodology in the present case is consistent with its practice of using data from other market economies to test the reliability of surrogate country data. *See, e.g., Certain Partial-Extension Steel Drawer Slides with Rollers From the People's Republic of China*, 60 Fed. Reg. 54,472, 54,475 (October 24, 1995) (final determination) (tested Indian import data for rivets against Indonesia import price data); *Coumarin From the People's Republic of China*, 59 Fed. Reg. 66,895, 66,900 (December 28, 1994) (final determination) (rejected Indian import statistics to value chlorine because it determined that the data was aberrational based on a comparison with data from five other market countries).

Woodings also contends that the comparison of Indian to U.S. and Indonesian data was unreasonable because the U.S. and Indonesian data covered basket categories of several different types of steel. In contrast, according to Woodings, the Indian data was specific to particular grades, shapes, and sizes of steel bar comparable to that used to produce the merchandise in this case. In support of its argument, Woodings relies on *Sigma Corp. v. United States*, 19 CIT 753, 755–56, 888 F. Supp. 159, 162 (1995) for the proposition that the comparison of basket categories of steel is inappropriate. The Court rejects this argument.

Woodings misinterprets *Sigma*. In that case, the Court remanded Commerce's results because Commerce compared data from one tariff category to data from a combination of tariff categories. *Id*. However, in the final results of the present case, Commerce compared Indian import statistics to Indonesian and U.S. import statistics based on an identical tariff category, 7214.50, HTSUS. Therefore, Commerce's comparison in the present case was appropriate.

Commerce's comparison of Indian data with U.S. and Indonesian data is both within Commerce's statutory authority and consistent with past practice. Evaluation of data requires Commerce to apply its judgment and expertise. There has been no evidence presented which suggests that Commerce erred in applying its expertise. Rather, Commerce's comparisons provide substantial evidence that the 1991 Indian figures were aberrational and therefore were properly discarded.

Because Commerce has supported its rejection of the 1991 Indian import data with substantial evidence, the Court affirms the Final Determination with respect to this issue. However, if Commerce decides, pursuant to this Court's remand with respect to the first issue in today's decision, that PRC import data more accurately prices the steel input than the surrogate country data, then Commerce should utilize PRC data rather than Indian data.

### 2. *Finished Pallets as the Surrogate Value for Assembled Pallets:*

Woodings challenges Commerce's Final Determination on the grounds that Commerce erred when it used the cost of finished pallets as a surrogate value for the cost of pallets assembled by the PRC manufacturers from raw materials. Woodings argues that Commerce was required to use a factors of production approach to value the pallet input. This approach requires Commerce to sum the value of the wood, nails, and labor used to produce the pallets.

Woodings mistakenly believes that the statute requires Commerce to value packing material according to a factors of production approach. The Court disagrees. Although 19 U.S.C. § 1677b(c)(1) requires the administering authority to use a factors of production analysis to value merchandise produced in a non-market economy, it does not specify the same treatment for the packing material accompanying the merchandise. Rather, the statute instructs Commerce to add "an amount for general expenses and profit plus the cost of containers, coverings, and other

expenses." *Id.* Thus, 19 U.S.C. § 1677b(c)(1) provides Commerce with some discretion to value items ancillary to the product, such as packing materials. The provision reflects a policy to provide Commerce with some flexibility for items that are difficult to value according to a factors of production approach, such as profit or overhead expenses, and for items that presumably constitute a small fraction of the value of the merchandise, such as packing materials.

The Court notes that Commerce requests a remand on this issue in order to permit it to clarify its position with respect to the pallets. The Court declines to do so. Apparently, Commerce's request stems from the fact that Commerce used the factors of production approach in the third administrative review. *Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, from the People's Republic of China*, 61 Fed. Reg. 15,028, 15,030–31 (April 4, 1996) (final, third admin. review). While substantial questions are raised in the briefs about the methods utilized in the third period of review, the third period of review is not the subject of the present case. Hence, the Court will not grant Commerce's open-ended remand request because these issues can be addressed if the third period administrative review is litigated before this Court.

Because Commerce acted in conformity with 19 U.S.C. § 1677b(c)(1) when it used the cost of a finished pallet to value pallets in the second administrative review, the Court upholds the Final Determination with respect to this issue.

## CONCLUSION

The Court remands the Final Determination with respect to (1) Commerce's use of surrogate country data for valuation of the steel input when import data is available, and (2) Commerce's use of the longest distance between factory to suppliers to calculate inland freight expenses. The Court affirms Commerce's Final Determination with respect to (1) Commerce's rejection of certain data from the surrogate country India based on data from other market economy countries, and (2) Commerce's use of the cost of a finished pallet to value pallets that were assembled from raw materials. A separate judgment and order thereon will be entered accordingly.